IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WANDA L. VAN VORST, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-3018-BK |
| | § | |
| CAROLYN COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION**

Pursuant to the parties' consent to proceed before the undersigned, Doc. 14, the Court now considers the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's *Memorandum of Law*, Doc. 16, which the Court construes as a motion for summary judgment, is **DENIED**, *Defendant's Motion for Summary Judgment*, Doc. 17, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

### I.  BACKGROUND[1]

#### A.  Procedural History

Plaintiff seeks judicial review of a final decision by Defendant denying her claims for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff filed for SSI in January 2011, claiming that she became disabled in June 2008. Doc. 11-6 at 2-9. Plaintiff's application was denied at all administrative levels. Doc. 11-3 at 2-7, 17-19; Doc. 11-5 at 3-8, 14-15. She now appeals to this Court pursuant to 42 U.S.C. § 405(g).

#### B.  Factual Background

At the time of her alleged onset of disability, Plaintiff was 48 years old. Doc. 11-6 at 2.

---

[1] The following background comes from the transcript of the administrative proceedings, Doc. 11, which is split among 13 documents, Docs. 11-1 to 11-13.

She has a ninth grade education and was previously employed as a truck driver. Doc. 11-3 at 43. Plaintiff generally suffers from obesity, diabetes with neuropathy, hypertension, and joint pain. Because the relevant period for SSI claims begins on Plaintiff's SSI application date, the Court does not consider evidence predating January 2011.[2] 20 C.F.R. § 416.335; *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir.1999).

Before moving to Texas, Plaintiff mostly sought treatment at local hospitals in Florida. In January 2011, Plaintiff reported to her doctor that she had feelings of weakness and numbness in her limbs. Doc. 11-9 at 14. She had decreased response to tactile stimulation on the soles of her feet, but her gait and stance were normal. Doc. 11-9 at 16. The doctor diagnosed her with benign essential hypertension and Type II diabetes mellitus. Doc. 11-9 at 16. She was taking Lyrica for her diabetes and noted that it was working. Doc. 11-9 at 19. In February 2011, Plaintiff was again noted to have decreased response to tactile stimulation in her feet. Doc. 11-9 at 44. In April 2011, Plaintiff reported that she could complete her activities of daily living without assistance. Doc. 11-9 at 64. Plaintiff presented to a Florida hospital in June 2011 complaining of chest pain and stayed for several days. Doc. 11-10 at 7-14, 39-40; Doc. 11-11 at 6. Dr. Mohammad Munir noted that Plaintiff kept changing her story about her symptoms and, after extensive cardiac testing revealed nothing, she eventually left the hospital against medical advice, threatening to sue the hospital and doctors. Doc. 11-10 at 28; Doc. 11-11 at 6.

In July 2011, Dr. Olga Garcia assessed Plaintiff's residual functional capacity ("RFC") based on Plaintiff's diagnoses of arthalgias, diabetes, obesity, and vertigo. Doc. 11-9 at 81-88. Dr. Garcia found that Plaintiff can occasionally lift 20 pounds and frequently lift 10 pounds, and

---

[2] As a result of this, Plaintiff's argument challenging the ALJ's omission of her arthritis as a serious impairment is precluded because the only evidence Plaintiff cites supporting her contention predates her SSI application date. Accordingly, that claim will not be further discussed.

can stand, walk, or sit for about six hours in an eight-hour workday.  Doc. 11-9 at 82.  Dr. Garcia also opined that Plaintiff is unlimited in pushing and pulling.  Doc. 11-9 at 82.  As to postural limitations, Dr. Garcia found that Plaintiff can frequently stoop, kneel, crouch, and crawl, but can only occasionally climb ramps/stairs/ladders/ropes/scaffolds and balance.  Doc. 11-9 at 83.  Dr. Garcia observed that Plaintiff herself had stated she could lift 20 pounds.  Doc. 11-9 at 83.

In April 2012, Plaintiff presented to the hospital with kidney stones.  Doc. 11-12 at 37.  She stated that she had lost weight, but admitted that her diet had been very poor since recently moving to Texas.  Doc. 11-12 at 39.  In July 2012, Plaintiff presented to the same hospital for an earache and stated that she had stopped taking her blood pressure and diabetes medications because she thought both conditions were under control.  Doc. 11-12 at 31.  She again stated that she could perform her activities of daily living independently.  Doc. 11-12 at 35.  At the end of 2012, Plaintiff was placed back on insulin.  Doc. 11-13 at 24-25.

### C.  The Administrative Hearing

Plaintiff testified that she was in near constant pain from her back and had spent a year in a wheelchair because of it, but had never taken pain medication for the condition on an ongoing basis.  Doc. 11-3 at 46-48.  Plaintiff averred that, since moving to Texas in the fall of 2011, she had been unable to find low cost treatment and had sporadically sought treatment at hospitals.  Doc. 11-3 at 48-49.  Plaintiff also testified that she only took over-the-counter pain medication a couple of times a week because the medication aggravated her kidneys.  Doc. 11-3 at 49-50.  She has been on and off insulin both because of the cost and because she thought she had the condition well-controlled when she was dieting.  Doc. 11-3 at 50-51.  At the time of the hearing, Plaintiff was taking insulin again.  Doc. 11-3 at 55-56.  However, she was not able to afford the Lyrica her Florida doctor prescribed for her neuropathy because it was $80 per bottle.  Doc. 11-3

at 57.

### D. The ALJ's Findings

In June 2013, the ALJ issued a decision unfavorable to Plaintiff. Doc. 11-3 at 17-19. At step one, she found that Plaintiff had not engaged in substantial gainful activity since January o2011. Doc. 11-3 at 22. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, diabetes with peripheral neuropathy, and hypertension. Doc. 11-3 at 22. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Appendix 1. Doc. 11-3 at 24. The ALJ further found that Plaintiff retained the RFC to perform light work with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, and the ability to sit for six hours or stand and/or walk for six hours in an eight-hour workday, with the following limitations: she is able to occasionally stoop, crouch, crawl, kneel, and climb ramps or stairs, but is unable to balance or climb ladders, ropes, or scaffolds; she is precluded from concentrated exposure to temperature or weather extremes. Doc. 11-3 at 24.

In connection with these findings, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but Plaintiff's statements about their intensity were not entirely credible. Doc. 11-3 at 25. Specifically, the ALJ noted that the record demonstrated (1) Plaintiff's ability to wash clothes, cook simple meals, perform self-care and personal hygiene tasks, and get to her bedroom on the second floor of the house she lives in; (2) that Plaintiff does not take ongoing medication for her pain and relies on over-the-counter medication for pain control; (3) Plaintiff exhibited no objective signs of pain; (4) the fact that she receives only intermittent medical care; (5) Plaintiff's failure to take her medications as prescribed; and (6) her successful treatment when

she does take her medication.  Doc. 11-3 at 25-28.  At step four, the ALJ found that Plaintiff is unable to perform her past relevant work.  Doc. 11-3 at 28-29.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, she can perform the jobs of cafeteria attendant, folding machine operator, and stock checker − apparel.  Doc. 11-3 at 29-30.

## II.  LEGAL STANDARD

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5)

if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)–(f), 416.920(b)–(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### III.  DISCUSSION

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence because she largely based her decision on Plaintiff's noncompliance with taking her medications and failure to seek treatment, but did not address Plaintiff's explanation for the lack of treatment – chiefly, her lack of funds – which violates SSR 96-7p. Doc. 16 at 11-12. Plaintiff also contends that the ALJ premised her credibility determination on impermissible factors, such as the lack of observable signs of pain. Doc. 16 at 13. Plaintiff asserts that such signs are relevant only where a claimant alleges disability by pain alone, not due to impairments as Plaintiff has alleged here. Doc. 16 at 13-14.

Defendant responds that the ALJ's credibility determination is based on many more factors besides Plaintiff's lack of treatment. Doc. 17 at 4-5. Defendant points to four reasons

6

why Plaintiff's argument that the ALJ did not consider her inability to pay has no merit: (1) the ALJ specifically considered Plaintiff's testimony that she could not afford Lyrica; (2) the ALJ pointed to many other factors, other than her failure to take her medication, in assessing Plaintiff's credibility; (3) Plaintiff's records show that, although her medical visits were infrequent, she had access to treatment in the emergency room; and (4) the record shows that Plaintiff's failure to comply with doctors' orders did not always involve an inability to pay. Doc. 17 at 6-7.

Plaintiff replies that while the ALJ recited Plaintiff's testimony about Lyrica, she did not indicate that she took the testimony into consideration in her credibility assessment. Doc. 18 at 2. Indeed, Plaintiff notes that the ALJ stated that a person with a profound level of pain would seek prescription strength medications to control diabetic neuropathy. Doc. 18 at 2-3. Plaintiff contends that nearly all of the ALJ's factors in her credibility determination boil down to Plaintiff's inability to pay for treatment, such as infrequent trips to the doctor, not taking prescribed medications, and a gap in care for more than a year during which Plaintiff sought only emergency room treatment. Doc. 18 at 3. Plaintiff maintains that her limited ability to get treatment sometimes does not show that she could get treatment all the time. Doc. 18 at 4.

An ALJ's findings regarding the credibility of subjective symptom testimony is "entitled to considerable judicial deference." *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983). SSR 96-7 requires that, in assessing a claimant's credibility, the ALJ must consider the record as a whole, including the medical evidence, the claimant's statements about her symptoms, information provided by doctors about the symptoms and how they affect the individual, and any other relevant evidence in the case record. SSR 96-7p, 1996 WL 374186 at *1 (S.S.A. July 2, 1996). While a medical condition that can reasonably be remedied by

treatment is not disabling, if a "claimant cannot afford the prescribed treatment or medicine and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." L*ovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (internal quotations omitted); *see also* F*ellows v. Apfel*, 211 F.3d 125, *3 (5th Cir. 2000) (Table decision) ("It is true that if a claimant cannot afford the prescribed treatment or medicine, a curable, temporary disability is treated as a permanent one.") (citation omitted).  Therefore, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  SSR 96-7p, 1996 WL 374186 at *7.

     Here, at least some portion of the evidence that the ALJ cited in support of her credibility assessment related to Plaintiff's inability to afford treatment; to wit, the ALJ's findings that (1) Plaintiff did not take ongoing medication for her pain and relies on over-the-counter medication for pain control; (2) she infrequently went to the doctor and received only intermittent medical care; and (3) her failure to take her medications as prescribed.  Doc. 11-3 at 25-28.  The ALJ's reliance on these factors was inappropriate.  *See* SSR 96-7p.

     Nevertheless, Plaintiff was not prejudiced by this error because substantial evidence still supports the ALJ's decision that Plaintiff is not disabled within the meaning of the Act.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected.").  For example, although Plaintiff's neuropathy was an issue, Doc. 11-9 at 44, there is no evidence in the record to suggest that her decreased response to tactile stimulation prevents her from working.  Additionally, Plaintiff's conduct during her treatment for her chest pain is

telling. There is nothing in the record to suggest that Plaintiff left the hospital because she could not pay for the treatment. Instead, Dr. Munir notes that, after extensive – and likely expensive – cardiac testing, Plaintiff kept changing her symptoms and then left the hospital against medical advice. Doc. 11-11 at 6. Moreover, Plaintiff twice told healthcare providers in Texas that she had stopped taking her diabetes medication because she had the condition under control through dieting. Doc. 11-12 at 31, 39. This indicates both that money was not always a factor in Plaintiff's decision to seek treatment and that her diabetes was not a disabling condition. Finally, Plaintiff noted on at least two occasions that she could engage in her normal activities of daily living without assistance, wash clothes, and cook simple meals. Doc. 11-3 at 25; Doc. 11-9 at 35; Doc. 11-12 at 64. Viewing the record as a whole, the ALJ's determination that Plaintiff was not entirely precluded from engaging in substantial gainful activity is supported by substantial evidence. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se. Plaintiff must show that she was so functionally impaired . . . that she was precluded from engaging in any substantial gainful activity."). Accordingly, Defendant is entitled to summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's *Memorandum of Law*, construed as a motion for summary judgment, Doc. 16, is **DENIED**, *Defendant's Motion for Summary Judgment*, Doc. 17, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on September 10, 2015.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE